DECISION
{¶ 1} Relator, Alice M. Bogan, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied relator temporary total disability ("TTD") compensation on *Page 2 
grounds that she voluntarily abandoned her employment, and to grant said compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that relator did not voluntarily abandon her employment because relator did not willingly engage in behavior that relator knew could result in her termination. Although the employer's associate handbook prohibited the use of illegal drugs or alcohol while on the employer's property and prohibited an employee reporting to work or being at work under the influence of illegal drugs or alcohol, those were not the circumstances that led to relator's firing. The magistrate found that because there was no evidence that relator used illegal drugs or alcohol on the employer's property, and because relator was not working or reporting for work when she tested positive for cocaine, relator did not violate the provision in the associate handbook. Therefore, the magistrate determined that the commission abused its discretion by denying relator TTD compensation based upon a voluntary abandonment of her employment. Accordingly, the magistrate has recommended that we grant a writ of mandamus vacating the commission's order and remand this matter to the commission so that it can determine relator's right to TTD compensation based upon the medical evidence in the record.
 {¶ 3} The employer-respondent, Tomasco Mulciber, Inc., has filed an objection to the magistrate's decision arguing that the magistrate erroneously concluded that the commission abused its discretion by denying TTD compensation on the basis of *Page 3 
voluntarily abandonment. In support of its objection, the employer makes four arguments. We find the employer's arguments unpersuasive.
 {¶ 4} First, the employer contends that the sufficiency of the proof under State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, which sets forth the test for when a firing is voluntary, was never in dispute. In Louisiana-Pacific, the court characterized a firing as "voluntary" when that firing results from the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Although the employer may be correct that these elements were never disputed, the employer misunderstands the essence of the magistrate's decision.
 {¶ 5} At the core of the magistrate's decision was her finding that relator did not engage in the prohibited conduct identified in the associate handbook. The magistrate noted that there was no evidence that relator used illegal drugs or alcohol while on the employer's property or that she reported to work or was working under the influence of illegal drugs or alcohol. The magistrate found that on the day in question, relator was off work on FMLA leave. Relator came to the employer's office simply to drop off work restrictions from her doctor. She was not working or reporting for work. Because relator did not engage in conduct that violated the employer's work rule, further analysis under the Louisiana-Pacific test was unnecessary.
 {¶ 6} Second, the employer argues that the magistrate erred by concluding that relator's cocaine use did not cause her allowed conditions. Rather, the employer points out that the cause of relator's conditions was not disputed. Although the magistrate noted *Page 4 
that relator's drug use did not cause her allowed conditions, that statement had nothing to do with the magistrate's analysis. The magistrate's analysis was premised on her finding that there was no evidence relator engaged in conduct that the associate handbook identified as a dischargeable offense. Therefore, we find the employer's second argument misplaced.
 {¶ 7} The employer's third and fourth arguments are also unpersuasive. In its third argument, the employer mischaracterizes the magistrate's decision and then criticizes the mischaracterization. Contrary to the employer's assertion, the magistrate did not find that "having cocaine in her system could not have caused an unsafe work place." Rather, the magistrate stated that "since relator was not working, relator could not have caused an unsafe work place." The fact that relator was on FMLA leave and not working is the linchpin of the magistrate's analysis. The employer does not contest this factual finding. Therefore, the employer's argument is based on a flawed premise.
 {¶ 8} Lastly, in its fourth argument, the employer challenges the magistrate's characterization of the employer's anti-drug/alcohol policy as "overbroad." This too is a mischaracterization of the magistrate's decision. The magistrate stated that to apply the employer's anti-drug/alcohol policy to the relator's conduct would be an overbroad application of the policy. As previously noted, the employer's policy prohibits the use of illegal drugs or alcohol on the employer's premises and prohibits an employee reporting to work or being at work while under the influence of illegal drugs or alcohol. It is undisputed that relator was on FMLA leave and was not working at the time of the positive drug test. Therefore, we agree with the magistrate that the relator's conduct did not violate the employer's policy. *Page 5 
 {¶ 9} For the foregoing reasons, we overrule relator's objection.
 {¶ 10} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus to the extent that we order the commission to vacate its order denying relator TTD compensation and to reconsider relator's entitlement to TTD compensation after considering the medical evidence in the record.
Objection overruled; writ of mandamus granted.
 BRYANT and FRENCH, JJ., concur. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 11} Relator, Alice M. Bogan, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total disability ("TTD") compensation on grounds that she voluntarily abandoned her *Page 7 
employment, and ordering the commission to find that she is entitled to that compensation.
Findings of Fact: {¶ 12} 1. Relator was an employee of respondent Tomasco Mulciber, Inc. ("Tomasco" or "employer"), a manufacturer and supplier of automotive parts. Relator was hired as a machine operator in July 2001.
 {¶ 13} 2. Relator's workers' compensation claim was ultimately allowed for "bilateral tenosynovitis of hands, bilateral de quervains syndrome" and "carpal tunnel syn bilateral." Various dates are provided in the record relative to the allowed conditions: some orders indicate an injury date of January 29, 2004, while others note a date of diagnosis of March 9, 2004. The March 9, 2004 date would correspond to the medical report of Matthew A. Bridger, M.D., who examined relator on that date and diagnosed her with bilateral tenosynovitis of the forearm. Relator completed an incident report on March 9, 2004, wherein she indicated her date of injury as follows: "1. Date of Injury: 1/04 2. Time Employee Began Work? 6[:]00 3. Time of Injury: 3[:]30 AM ."
 {¶ 14} 3. There is evidence in the record indicating that relator was absent from work for various periods of time beginning October 22, 2003 into March 2004 pursuant to the Federal Medical Leave Act ("FMLA"). According to that document, relator was on FMLA leave on March 9, 2004.
 {¶ 15} 4. When relator was hired she was given an associate handbook. That document was signed by relator on July 16, 2001. The following portions of that handbook are relevant here: *Page 8 
 Alcohol and Drugs
 Associates who abuse drugs or alcohol pose a serious threat to the health and safety of themselves, their co-workers, the general public, and the productivity of TOMASCO. Substance abuse on or off the job impairs perception, judgment, coordination and reflexes and, thus diminishes the ability to perform a job in a safe and satisfactory manner. As a result, substance abusers cause substantially more accidents and injuries than non-abusers. The quality and quantity of their work are also well below that of others, and they have significantly higher absenteeism and tardiness rates.
 Like other employers, TOMASCO cannot tolerate substances abuse in the workplace. This results in increased costs to TOMASCO and jeopardizes TOMASCO's reputation. TOMASCO is committed to providing our Associates with a safe and productive place to work by maintaining a drug and alcohol-free environment. To fulfill that commitment, TOMASCO has implemented this substance abuse policy.
 For purpose of this policy, an illegal drug is defined as one that: (a) is not legally obtainable; (b) is legally obtainable, but has been obtained illegally; or (c) is not used for the purpose for which it is prescribed or manufactured. * * *
 Conduct Prohibited
 The * * * use * * * of illegal drugs or alcohol while on TOMASCO premises or business is prohibited. Associates are also prohibited from reporting to, or being at work while under the influence of alcohol or illegal drugs. Any Associate who violates these rules is subject to corrective action, up to and including immediate termination of employment[.] * * *
 Drug and Alcohol Testing
 All Associates of TOMASCO are required as a condition of employment to submit upon request to a urinalysis, breathalyzer and/or blood test to detect the presence of illegal drugs or alcohol in [their] system in the following circumstances:
 1. At least once a year, on periodic, random dates * * *. *Page 9 
 2. When TOMASCO has reasonable cause to believe an Associate is under the influence of illegal drugs or alcohol while on TOMASCO premises or business.
 3. Following a work-related accident or safety violation.
 4. Upon the returning to work following an absence of thirty days or more.
 * * *
 Samples that test positive for the presence of illegal drugs or alcohol will be subject to a second, more comprehensive confirmatory test. All Associates with confirmed positive test results are subject to immediate termination. * * *
 {¶ 16} 5. On March 9, 2004, relator was off work on FMLA leave. She came to the Tomasco office and submitted work restrictions from her doctor. At that time, relator was subjected to alcohol and drug testing. The reasons given for the tests were "post accident" and "Accident or Unsafe practice." Relator tested positive for cocaine.
 {¶ 17} 6. Tomasco terminated relator's employment on March 13, 2004 for the following reason: "Having in your possession, purchase, sell, use or working under the influence of any unauthorized or illegal intoxicants, narcotics, or drugs on TOMASCO premises at any time."
 {¶ 18} 7. Relator's request for a closed period of TTD compensation from March 8 through April 4, 2004, the date her doctor estimated she could return to work, was initially granted by the Ohio Bureau of Workers' Compensation ("BWC").
 {¶ 19} 8. Tomasco appealed and the matter was heard before a district hearing officer ("DHO") on May 12, 2004. The DHO granted relator's request for TTD compensation from March 8 through June 4, 2004 after rejecting Tomasco's argument that relator voluntarily abandoned her employment when she tested positive for cocaine. Specifically, the DHO stated: *Page 10 
 The District Hearing Officer finds that the injured worker did not violate the employer's drug policy and finds that she did not voluntarily abandon the workplace under [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401].
 The employer's handbook prohibits the use of illegal drugs while on the employer's premises. The drug test that showed positive for cocaine was done on 03/09/2004. The employer has now submitted evidence showing that the injured worker did not work on 03/09/2004. Therefore[,] the employer has not shown use while on the premises. In addition[,] the injured worker alleges that the test results are a false positive, that she has not used cocaine at all. The District Hearing Officer finds that the employer has not submitted sufficient proof to show a violation of their policy.
(Emphasis sic.)
 {¶ 20} 9. Tomasco appealed and the matter was heard before a staff hearing officer ("SHO") on July 8, 2004. The SHO vacated the prior DHO's order and found that no TTD compensation was payable because relator had voluntarily abandoned her employment. The SHO reasoned:
 The Tomasco Mulcifer [H[andbook/Rules were signed by the injured worker on 07/16/2001. The Rules provide for random drug testing and it is used to prevent substance abuse on or off the job. It states "All associates with confirmed positive test results are subject to immediate termination." The drug testing was collected on 03/09/2004 and was postivie for "cocaine." The termination notice was dated 03/17/2004 and stated she was terminated for "failure to pass a drug test." It mentioned that an employee having in their possession, purchase, sell, use or working under the influence of any unauthorized or illegal intoxicants, narcotics, or drugs on Tomasco premises at any time is subject to termination from employment. This statement includes the "use" on or off the premises. The injured worker clearly violated a known work rule (use of illegal narcotic) when she should have known it would result in her termination and it was clearly defined prohibited conduct. It was previously identified as a dis-chargeable offense. When the injured worker violated this policy she abandoned her former position of employment *Page 11 
and is not entitled to receive temporary total disability compensation.
(Emphasis sic.)
 {¶ 21} 10. Relator's appeal was refused by order of the commission mailed August 24, 2004, and her request for reconsideration was denied by order mailed September 8, 2004.
 {¶ 22} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 24} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's *Page 12 
treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. See R.C. 4123.56(A); State ex rel. Ramirez v. Indus.Comm. (1982), 69 Ohio St.2d 630.
 {¶ 25} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation.State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44. In State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, 121, the court stated as follows:
 * * * [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *
 {¶ 26} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the court characterized a firing as "voluntary" when that firing is generated by the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 27} In the present case, it is absolutely clear that theuse of illegal drugs or alcohol while on Tomasco property is prohibited and that the employee can be terminated. Also, employees are prohibited from reporting to, or being at work under the influence of illegal drugs or alcohol. As the handbook states under Conduct Prohibited: "The * * *use * * * of illegal drugs or alcohol while on TOMASCO premises orbusiness is prohibited. Associates are also prohibited from reportingto, or being at work *Page 13 while under the influence of alcohol or illegal drugs. Any Associate who violates these rules is subject to corrective action, up to and including immediate termination of employment." (Emphasis added.) In the present case, there is no indication that relator was reporting to work. To the contrary, the evidence indicates that relator was off work on leave under FMLA. Further, although relator was on Tomasco property to drop off a copy of her restrictions, there is no evidence that she used drugs while on the property. Pursuant to Tomasco's policy denouncing substance abuse, which includes alcohol, drugs and illegal drugs, it appears that if relator would have tested positive for alcohol, she likewise could have been terminated. If an employee can be subjected to random drug and alcohol testing on days when they are not working, then an employee could be terminated for having a few drinks at a bar with their friends on the weekend. This does not seem reasonable. Further, the reasons given for the test were "post accident" or "Accident or Unsafe practice." Relator's allowed conditions (carpal tunnel and tenosynovitis) developed over time and there is no actual date of injury. Her use of drugs did not cause her allowed conditions. Also, since she was not working, relator could not have caused an unsafe workplace.
 {¶ 28} Because the evidence shows that relator was not working on March 9, 2004, and did not use drugs while on Tomasco property, and because this application of Tomasco's policy is overbroad, the magistrate finds that the commission has abused its discretion in finding that relator voluntarily abandoned her employment when she tested positive for cocaine on a day she was not working.
 {¶ 29} Based on the foregoing, it is this magistrate's conclusion that relator has demonstrated that the commission abused its discretion when it determined that *Page 14 
Tomasco had met its burden of proving that relator had voluntarily abandoned her employment when she tested positive for cocaine on a day she was not working, and there was no evidence she used drugs on Tomasco property. As such, this magistrate finds that this court should issue a writ of mandamus ordering the commission to vacate its order denying relator TTD compensation on grounds that she voluntarily abandoned her employment and should reconsider the issue after considering the medical evidence in the record. *Page 1